

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. John E. Taylor, Chief Supervisor
Oil & Gas Division
Railroad Commission of Texas
Austin, Texas

Dear Mr. Taylor:

Opinion No. O-2199
Re: Legality of producing
casinghead gas to be
burned in the manufacture
of carbon black without
such gas first being pro-
cessed for its gasoline
content; and legality of
venting dry gas, under
circumstances stated, from
a gasoline plant

We acknowledge receipt of your letter of April 9, 1940, requesting our opinion on two questions.

You first asked whether or not the Commission has the authority to allow casinghead gas to be burned in the manufacture of carbon black without such gas first being processed for its gasoline content, provided a finding is made that no gasoline plant is available in the field for the processing of such casinghead gas, and such gas is being burned in flares.

This question has arisen, no doubt, by reason of subsections (h) and (i), Section 3 of Article 6008, providing:

"(h) The production of natural gas in excess of transportation or market facilities, or reasonable market demand for the type of gas produced." (One of the enumerated purposes for which the production of gas is prohibited.)

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

The assumed finding on the part of the Railroad Commission that, as to the subject gas, there would be no adequate transportation or market facilities, makes it necessary to determine whether these limitations operate on production for other purposes; that is, if the gas cannot be transported or sold, do the limitations prevent its production for other purposes? Other provisions of the act warrant uses of gas by the owner other than for transporting or selling the same on the market. Accordingly, subsection (h) of Section 3 is applicable as a limitation only where the owner is engaged in transporting or selling the gas on the market. There can be no production in excess of the need for transport or sale except that the excess be used for some other lawful purpose. The limitation contained in any one subsection of the act cannot reasonably be interpreted to preclude other lawful use and we do not consider that the limitation of this section operates to preclude the manufacture of carbon black without first extracting the gasoline content. We next examine subsection (i) of Section 3, Article 6008:

> "(i)  The use of natural gas for the manufacture of carbon black without first having extracted the natural gasoline content from such gas." (One of the enumerated purposes for which the production of gas is prohibited.)

We interpret this subsection to embrace a limitation on production of gas for a particular use; that like subsection (h), it is not inclusive of other uses. Where the owner puts his gas primarily to the use of manufacturing carbon black, the natural gasoline content must be first removed.

Here the subject gas is casinghead gas and its production is only incident to the production of oil, not primarily for the manufacture of carbon black. We do not consider subsection (i) of Section 3, Article 6008, as a limitation on its use.

In examining the whole of Article 6008, we find other reasons for arriving at this conclusion.

Casinghead gas is by subsection (i), Section 2 of Article 6008 defined to be "any gas and/or vapor indigenous to an oil stratum and produced from such stratum with oil." Inasmuch as by subsection (d) of Section 2 any well producing in excess of a gas/oil ratio of 100,000 cubic feet of natural gas to each barrel of crude petroleum oil constitutes a gas well, then the production of gas in any well of less ratio constitutes an oil well under subsection (e) of Section 2, and the gas from an oil well is necessarily casinghead gas.

We find in subsection (m), Section 3, Article 6008, by implication, gas from a well producing a gas/oil ratio of less than 100,000 to 1 may be put to any use, because it is only gas produced in excess of that ratio that must be put to one or more of the uses authorized. It reads:

"Section (m). The production of
more than one hundred thousand (100,000)
—cubic feet of gas to each barrel of crude
petroleum unless such gas is put to one
or more of the uses authorized for the
type of such gas so produced under allocations made by the Commission."

This provision is one of a number defining "waste". By it casinghead gas may be produced in quantities of less than 100,000 cubic feet for 1 barrel of oil, and not further utilized, without committing statutory waste. Accordingly, should we have given subsection (i) of this section an interpretation other than exclusive in character it would have been at variance with the permissive results of subsection (m). That gas not in excess of the prohibited ratio of 100,000 cubic feet of gas to 1 barrel of oil may by virtue of subsection (m) be allowed to escape free into the air without committing statutory waste, it follows that no reasonable limitation could be placed upon the use of that gas if not allowed to escape. The prevention of waste is the foundation of the power of this governmental regulation and if complete liberation of the gas without use is not waste, then no particular use of the gas could reasonably be determined to be waste.

For further light on the intendment of the Legislature, we refer to subsection (3) of Section 7, Article 6008, for specific authorization for the uses of casinghead gas. It reads:

> "Subsection (e). Casinghead gas may be used for any beneficial purpose, which includes the manufacture of natural gasoline." (Emphasis ours)

We interpret this provision undoubtedly to include the manufacture of carbon black, without the imposition of the limitations provided in subsections (h) and (i) of Section 3 of Article 6008.

Your second question is as follows:

> "Does the Commission have the authority to permit a gasoline plant, which vents a portion of its residue gas to the air and operates in a field which does not produce both sweet and sour gas to take into its gathering lines and commingle in such lines and in the plant sweet or sour gas with casinghead gas if a volume of residue gas equivalent to or in excess of the total intake from gas wells, less shrinkage resulting from gasoline extraction, is utilized for the purpose permitted for sweet and sour gas by Article 6008."

You have quoted subsection (k) of Section 3, Article 6008, and subsections (1) and (2) of Section 7, Article 6008, presumably as provisions of the law raising doubt as to the power of the Commission to allow the venting of dry gas, irrespective of the circumstances set out in your question. The stated circumstances would indicate that said dry gas would be handled in such manner as effectually to avoid waste. It seems to us, however, that even though the manner in which the dry gas may be handled would effectually avoid waste, yet nevertheless, if in direct contravention of the provisions of the statutes, the same cannot be sanctioned. Subsection (k) of Section 3 provides:

"Subsection (k). Permitting any natural gas produced from a gas well to escape into the air before or after such gas has been processed for its gasoline content." (One of several provisions defining "waste".)

Also Section 7 of Article 6008 provides that no gas from a gas well shall be permitted to escape into the air, except that it be utilized for certain purposes.

In the face of these two express statutory prohibitions against the release of dry gas, that is, sweet or sour gas from a gas well, we are of the belief that it cannot be done. If there is a way of handling the gas so as to avoid practical waste with the venting of a commingled mixture, containing in part dry gas, the same will have to be authorized by the Legislature.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     *Hugh Q. Buck*

Hugh Q. Buck
Assistant

HQB:BBB

APR 25, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN